1  BUCHALTER
   A Professional Corporation
2  ANDREW H. SELESNICK (SBN 160516)
   THOMAS C. RICKEMAN (SBN 288248)
3  1000 Wilshire Boulevard, Suite 1500
   Los Angeles, CA  90017-1730
4  Telephone: 213.891.0700
   Fax: 213.896.0400
5  Email:  aselesnick@buchalter.com

6  Attorneys for Plaintiff
   Grand Avenue Emergency Medical Group, Inc.

7

8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  GRAND AVENUE EMERGENCY<br>PHYSICIANS MEDICAL GROUP, INC.,<br>13<br>   Plaintiff,<br>14<br>  vs.<br>15<br>GOTTLIEB LLC D/B/A MARTIN GOTTLIEB<br>16 & ASSOCIATES,<br>17<br>   Defendant. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF FIDUCIARY DUTIES**<br>**(3) CONSTRUCTIVE FRAUD**<br><br>**DEMAND FOR JURY TRIAL** |

18

19      Plaintiff Grand Avenue Emergency Physicians Medical Group, Inc. ("Grand Avenue")

20  alleges the below claims against Defendant Gottlieb LLC, doing business as Martin Gottlieb &

21  Associates ("Gottlieb") as follows:

22                   **PARTIES TO THIS ACTION**

23      1.      Plaintiff Grand Avenue is a California corporation with its principal place of

24  business located in Concord, California, and was at all relevant times qualified to do business in

25  the State of California.  Grand Avenue is comprised of emergency physicians licensed by the State

26  of California to practice medicine.  Grand Avenue staffs the emergency department at Mercy

27  Hospital Downtown and Mercy Hospital Southwest in Bakersfield, California.

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

                              **COMPLAINT**

2.     Grand Avenue is informed and believes, and thereon alleges, that Defendant Gottlieb is a Florida limited liability company headquartered in Jacksonville, Florida.  Gottlieb provides medical billing and coding services to emergency medical departments.

## JURISDICTION & VENUE

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  The parties are citizens of different states, and the amount in controversy exceeds $75,000.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## GENERAL ALLEGATIONS

**A.     Grand Avenue Provides Life-Saving Emergency Care.**

4.     The emergency care provided by Grand Avenue is the difference between life and death for countless Californians and is the most important component of our state's health care "safety net."  California's emergency rooms treated 14.6 million people in 2016 alone, an increase of 44% since 2006[1], and the American College of Emergency Physicians has determined that the implementation of the Affordable Care Act has resulted in a significant increase in emergency department visits across the nation.[2]

5.     Grand Avenue, and the emergency care physicians that comprise Grand Avenue, are out-of-network providers of emergency treatment.  They do not knowingly contract with health care plans or health insurance companies for pre-negotiated contract rates.  Rather, pursuant to Health and Safety Code section 1371.4, commercial insurers must reimburse Grand Avenue a reasonable and customary amount for the services rendered.  This amount typically exceeds the amount Grand Avenue would receive had it entered into pre-negotiated rate agreements with health care plans or health insurance companies.

6.     In order to bill health care plans, health insurance companies, Medicare, or Medi-Cal, an emergency department must first determine the proper billing codes for the services rendered.  Payors use these codes to calculate the amount they will reimburse health care providers.

---

[1] https://www.chcf.org/wp-content/uploads/2018/08/CAEmergencyDepartments2018.pdf
[2] http://newsroom.acep.org/2015-05-04-ER-Visits-Continue-to-Rise-Since-Implementation-of-Affordable-Care-Act

7.    Converting medical records and clinical notes into billing codes is a time-consuming task.  As a result, emergency departments often outsource this function to a third party that specializes in medical billing and coding.  Defendant Gottlieb is one such company.

8.    In December 2017, Grand Avenue received the contract to staff the emergency departments at Mercy Hospital Downtown and Mercy Hospital Southwest in Bakersfield, California.  Gottlieb made a pitch to Grand Avenue in order to be selected as its exclusive billing and coding services provider.

9.    On information and belief, Gottlieb had limited to no experience operating in California prior to entering discussions with Grand Avenue.  Nevertheless, Gottlieb represented to Grand Avenue that it was familiar with California-specific billing and coding requirements, including those related to billing Medi-Cal for services rendered.

**B.  The Service Agreement Between Grand Avenue and Gottlieb.**

10.    On December 1, 2017, Grand Avenue and Gottlieb entered into an Emergency Department Service Agreement ("Service Agreement").

11.    Section 1(a) of the Service Agreement set forth Gottlieb's obligation to appropriately code services rendered and bill payors based on fee schedules provided by Grand Avenue.  Specifically, the provision states:  "[Gottlieb] shall initiate appropriate bills on behalf of [Grand Avenue] in amounts based on fee schedules as shall be provided to [Gottlieb] by [Grand Avenue] from time to time, in form and content reasonably satisfactory to [Grand Avenue] and [Gottlieb] for all billable services performed by [Grand Avenue] in connection with its hospital department services[.]"

12.    Section 1(g) of the Service Agreement discusses Gottlieb's obligations with respect to Grand Avenue's relationship with health care plans and government payors like Medicare and Medi-Cal.  This Section provides that Gottlieb shall "[b]ecome involved in payor relations or carrier decisions on [Grand Avenue's] behalf when appropriate and as reasonably requested by Client."

13.    Section 1(g) further obligated Gottlieb to "perform start-up credentialing and enrollment processes for billing and remittance purposes for all government and Blue Cross Blue Shield payors for individuals and groups."  This enrollment process was to ensure that Grand

1   Avenue and its physicians were registered in the various payors' systems, and that all health care

2   providers at Grand Avenue had the appropriate credentials required by commercial and government

3   payors.

4       14.    The credentialing and enrollment process is distinct from entering into a pre-

5   negotiated network contract with payors.  The Service Agreement does not authorize Gottlieb to

6   unilaterally negotiate with commercial payors regarding a pre-negotiated rate agreement, nor does

7   it authorize Gottlieb to enter such an agreement on Grand Avenue's behalf.

8       15.    Section 20 and Attachment A of the Service Agreement provide that Gottlieb

9   "guarantee[s] collections" of payments for services provided by Grand Avenue's physicians.

10   Specifically, Gottlieb guaranteed that "its billing services shall result in gross collections from all

11   sources, of no less than $120 per patient after maturity, defined as 'average collection per patient.'"

12   Attachment A further provides that, if Gottlieb's collections fall short of this mark, Gottlieb must

13   refund Grand Avenue the difference between the actual, realized average collection per patient, and

14   the $120 average collection per patient promised.

15       16.    By entering the Service Agreement, Grand Avenue entrusted the entirety of its

16   coding and billing operations to Gottlieb.  Gottlieb was responsible for reviewing medical records

17   and clinical notes, properly coding various treatments, submitting claims to payors for

18   reimbursement, and ensuring the claims are collected.  Grand Avenue's revenue stream was

19   dependent on Gottlieb performing its role appropriately.

20       17.    Gottlieb, as Grand Avenue's agent, owed Grand Avenue fiduciary duties in

21   connection with its coding and billing services.  These duties included the duty to use reasonable

22   care in performing its services for Grand Avenue.

23   **C.    Gottlieb Unilaterally Negotiates a Contract with Anthem Blue Cross.**

24       18.    In early 2018, Gottlieb provided numerous documents to Grand Avenue and its

25   physicians to sign as part of the start-up enrollment and credentialing process, as contemplated by

26   Section 1(g) of the Service Agreement.  Due to the volume of documents, Gottlieb customarily

27   provided only signature pages to the physicians.  Grand Avenue relied on Gottlieb as its agent and

28   fiduciary to properly complete the remainder of the credentialing materials.

19.     In February 2018, Gottlieb circulated a batch of signature pages to certain Grand Avenue physicians.  Included among them were signature pages for documents prepared by Anthem Blue Cross ("Anthem"), a commercial insurer.

20.     At no point did Gottlieb disclose to Grand Avenue that these signature pages were anything but the typical start-up enrollment and credentialing documents it had been circulating previously.  Gottlieb had routinely been providing similar pages in connection with the process of credentialing Grand Avenue's doctors with commercial payors.

21.     As Grand Avenue only later discovered, however, these signature pages were in reality pulled from a pre-negotiated, "in network" rate agreement drafted by Anthem.

22.     At no point did Grand Avenue authorize Gottlieb to negotiate with Anthem regarding such an agreement.  To the contrary, Gottlieb knew, based on prior discussions, that Grand Avenue was an out-of-network provider that did not enter into pre-negotiated rate agreements with payors.  Gottlieb further knew that when a health care provider is interested in contracting with a payor for in-network rates, there are established, defined processes for doing so. Such an agreement would never be executed without extensive negotiations between the health care provider and the insurer. Nevertheless, Gottlieb intentionally and/or recklessly, and without authorization, unilaterally obtained this draft agreement from Anthem and passed along the signature pages to Grand Avenue physicians.

23.     Entering into a pre-negotiated rate agreement with a payor is a material change in the relationship between a health care provider and insurer.  Gottlieb, as Grand Avenue's agent and fiduciary, and pursuant to the terms of the Service Agreement, had a duty to disclose to Grand Avenue that the documents Gottlieb was requesting the doctors to sign included signature pages from such an agreement.  Gottlieb recklessly failed to disclose this fact.

24.     Reasonably believing that these documents were routine credentialing papers similar to prior documents Gottlieb had provided, and in reliance on Gottlieb as Grand Avenue's fiduciary and agent, Grand Avenue physicians signed the signature pages from Anthem, on or around February 8, 2018 and February 13, 2018, respectively.  Gottlieb, again without disclosing to Grand Avenue the nature of these documents, submitted them to Anthem.

25.     Subsequently, Anthem began reimbursing Grand Avenue at a significantly lower rate, as the pre-negotiated rates included in the contract Gottlieb entered were not favorable to Grand Avenue.  Gottlieb, as Grand Avenue's agent for billing and collecting payments, should have noticed this reduction in payments from Anthem and informed Grand Avenue.  Gottlieb failed to do so.

26.     Moreover, Gottlieb's average collection per patient rate fell below the amount guaranteed in Section 20 and Attachment A of the Service Agreement.  This reduction may be attributed to the decrease in reimbursements from Anthem, which resulted from Gottlieb causing Grand Avenue to become in-network with Anthem.  Grand Avenue repeatedly asked Gottlieb for information regarding why its collections were well below estimates, but Gottlieb never provided a proper explanation.

27.     Gottlieb did not and has not refunded Grand Avenue the difference between the average collection per patient it guaranteed in the Service Contract ($120) and the actual, lower average collection per patient it realized.

28.     On or around August 20, 2018, Grand Avenue provided notice to Gottlieb that it was terminating the Service Agreement.  The termination became effective on or around November 30, 2018.

29.     Grand Avenue enlisted DuvaSawko, another billing services provider, as Gottlieb's successor.  In October 2019, DuvaSawko discovered that Anthem had been reimbursing Grand Avenue at in-network rates, which were significantly lower than the usual and customary rates Grand Avenue received as an out-of-network provider.  DuvaSawko further discovered that Gottlieb had submitted signed network agreements to Anthem on behalf of Grand Avenue physicians.  DuvaSawko informed Grand Avenue of these facts.

30.     Grand Avenue subsequently terminated its purported in-network agreements with Anthem.  The terminations became effective in June 2020.

**D.     Gottlieb Fails to Properly Submit Bills to Medi-Cal.**

31.     Separately, prior to being terminated, Gottlieb also failed to appropriately enroll Grand Avenue's advanced practice clinicians (e.g. physician assistants, nurse practitioners, etc.)

1    with Medi-Cal.

2        32.    Medi-Cal regulations provide that these non-medical practitioners—referred to as

3    mid-level providers or advanced practitioner clinicians—must be enrolled with Medi-Cal for their

4    work to be reimbursable under the program.

5        33.    Per Section 1(g) of the Service Agreement, Gottlieb was required to perform all

6    necessary payor enrollments on behalf of Grand Avenue, including enrollment with "all

7    government" payors.  Gottlieb was therefore responsible for enrolling the doctors and mid-level

8    providers at Grand Avenue with Medi-Cal.

9        34.    Gottlieb failed to enroll Grand Avenue's mid-level providers with Medi-Cal.  On

10   information and belief, Gottlieb had little to no prior experience billing California government

11   payors like Medi-Cal.  Despite representing to Grand Avenue that it was familiar with California-

12   specific billing requirements, Gottlieb failed to understand that it was required to enroll Grand

13   Avenue's mid-level providers.

14       35.    As a result of Gottlieb's failure properly to enroll Grand Avenue's mid-level

15   providers, Medi-Cal denied numerous claims submitted by Gottlieb on Grand Avenue's behalf.

16       36.    Upon learning of Gottlieb's failure, Grand Avenue and DuvaSawko took efforts to

17   enroll all of Grand Avenue's mid-level providers.  After enrollment, DuvaSawko resubmitted some

18   of the denied claims to Medi-Cal on behalf of Grand Avenue.  Many of the claims, however, could

19   not be re-submitted for review because too much time had lapsed and the claims no longer met

20   Medi-Cal's deadlines for submission.

21       37.     Gottlieb's failure to enroll Grand Avenue's mid-level providers thus caused

22   substantial damage to Grand Avenue in the form of lost Medi-Cal reimbursements.

23                                   **FIRST CAUSE OF ACTION**

24                                   **BREACH OF CONTRACT**

25       38.    Grand Avenue incorporates the allegations contained in paragraphs 1 through 35 as

26   if set forth in full.

27       39.    Grand Avenue entered into the Service Agreement with Gottlieb.

28       40.    Pursuant to Section 1(a) of the Service Agreement, Gottlieb was required to "initiate

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

                                            7
                                     **COMPLAINT**

BN 41673006v2

appropriate bills" on behalf of Grand Avenue, pursuant to fee schedules agreed to with Grand Avenue. These fee schedules were based on Grand Avenue's usual and customary rates, not in-network rates.

41. Gottlieb failed to perform its obligations under Section 1(a). After enrolling Grand Avenue as an in-network provider with Anthem without Grand Avenue's authorization, Gottlieb was no longer initiating appropriate bills pursuant to Grand Avenue's fee schedule. Rather, it was inappropriately billing Anthem pursuant to Anthem's in-network rates. Gottlieb further failed to discover, and/or failed to disclose to Grand Avenue, that Anthem began reimbursing Grand Avenue at significantly lower rates.

42. Pursuant to Section 1(g) of the Service Agreement, Gottlieb was only permitted to become involved in Grand Avenue's relationships with commercial payors to the extent requested by Grand Avenue. Section 1(g) further obligated Gottlieb to properly enroll Grand Avenue's doctors and mid-level providers with Medi-Cal.

43. Gottlieb failed to perform its obligations under Section 1(g). Grand Avenue never requested that Gottlieb negotiate an in-network agreement with Anthem, or otherwise obtain a proposed in-network contract from Anthem. To the contrary, Grand Avenue made clear to Gottlieb that Grand Avenue was an out-of-network provider with Anthem. Nevertheless, and in breach of Section 1(g), Gottlieb unilaterally negotiated and/or obtained in-network agreements from Anthem, and sent the signature pages of the agreements to Grand Avenue without disclosing the nature of the agreements.

44. Gottlieb further breached Section 1(g) by failing to enroll Grand Avenue's mid-level providers with Medi-Cal.

45. Pursuant to Section 20 and Attachment A of the Service Agreement, Gottlieb guaranteed it would collect, on average, $120 per patient. Gottlieb further committed to refund Grand Avenue the difference if its average rate of collection fell below this amount.

46. Gottlieb breached Section 20 and Attachment A by failing to maintain an average collection per patient at or above $120, and by failing to refund Grand Avenue the difference between $120 and the actual, lower average collection rate Gottlieb collected.

47.     Grand Avenue has performed all conditions, covenants and promises required to be performed in accordance with the terms and conditions of the Service Agreement, except as excused or waived by Gottlieb's material breaches.

48.     As a direct and proximate result of Gottlieb's breaches, Grand Avenue suffered damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

49.     Grand Avenue incorporates the allegations contained in paragraphs 1 through 44, as if set forth in full.

50.     Gottlieb was Grand Avenue's agent with respect to Grand Avenue's medical coding and billing operations.  Gottlieb acted on Grand Avenue's behalf for purposes of preparing bills and sending them to payors.  By virtue of this relationship, Grand Avenue entrusted its revenue stream to Gottlieb, and Gottlieb owed Grand Avenue fiduciary duties, including but not limited to the duty of care.

51.     Gottlieb failed to act as a reasonably careful billing service provider would have acted under the same or similar circumstances.  Gottlieb intentionally, recklessly, and/or negligently, and without authorization, obtained pre-negotiated rate agreements from Anthem, despite knowing that Grand Avenue had no intention of becoming an in-network provider with Anthem.

52.     Gottlieb further recklessly and/or negligently, and without authorization, transmitted the signature pages of these documents to doctors at Grand Avenue, without disclosing to Grand Avenue the true nature of these documents.  Gottlieb also intentionally, recklessly, and/or negligently, and without authorization, submitted signed copies of the signature pages to Anthem.

53.     Gottlieb also recklessly and/or negligently failed to discover, and failed to disclose to Grand Avenue, that Anthem was reimbursing Grand Avenue at significantly lower rates.

54.     As a direct and proximate result of Gottlieb's breaches of its fiduciary duties, Grand Avenue suffered damages, and statutory and prejudgment interest, in excess of the jurisdictional

minimum of this court in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

55.     Grand Avenue incorporates the allegations contained in paragraphs 1 through 50, as if set forth in full.

56.     Gottlieb was Grand Avenue's agent with respect to Grand Avenue's medical coding and billing operations.  Gottlieb acted on Grand Avenue's behalf for purposes of preparing bills and sending them to payors.  By virtue of this relationship, Grand Avenue entrusted its revenue stream to Gottlieb, and Gottlieb owed Grand Avenue fiduciary duties, including but not limited to the duty to disclose material facts.

57.     Gottlieb recklessly and/or negligently failed to disclose to Grand Avenue that it obtained pre-negotiated rate agreements from Anthem, despite knowing that Grand Avenue had no intention of becoming an in-network provider with Anthem.

58.     Gottlieb further recklessly and/or negligently failed to disclose to Grand Avenue that the signature pages circulated were not from standard credentialing and enrollment documents, but were in fact taken from pre-negotiated rate agreements with Anthem.  Gottlieb also failed to disclose to Grand Avenue that it submitted the signature pages to the pre-negotiated rate agreements to Anthem.

59.     Gottlieb further recklessly and/or negligently failed to disclose to Grand Avenue that, subsequent to submitting the signed pre-negotiated rate agreement to Anthem, Anthem began reimbursing Grand Avenue at significantly lower rates.

60.     Each of these omissions was a breach of Gottlieb's fiduciary duties.

61.     Grand Avenue relied on Gottlieb, as its fiduciary, to fully disclose all material facts relating to the subject matter of the Service Agreement.  Had Gottlieb disclosed that the signature pages were from pre-negotiated rate agreements, neither Grand Avenue nor its physicians would have signed the documents.  Furthermore, had Gottlieb disclosed to Grand Avenue that Anthem was subsequently reimbursing Grand Avenue at a significantly lower amount, Grand Avenue would have acted sooner to terminate the pre-negotiated rate agreements with Anthem.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

10
**COMPLAINT**

BN 41673006v2

62.     As a direct and proximate result of Gottlieb's omissions and/or failures to disclose, Grand Avenue suffered damages, and statutory and prejudgment interest, in excess of the jurisdictional minimum of this court in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Grand Avenue prays for judgment against Gottlieb as follows:

1.     For monetary relief in an amount to be proven at trial and for interest thereon;

2.     For pre-judgment and post-judgment interest at the legal rate and penalties to the maximum extent permissible; and

3.     For such other or further relief as the court may deem just or proper.

DATED:  September 25, 2020                    BUCHALTER
                                              A Professional Corporation


                                              By:   /s/ Andrew H. Selesnick
                                                    ANDREW H. SELESNICK
                                                    THOMAS C. RICKEMAN
                                                    Attorneys for Plaintiff

1

**JURY DEMAND**

2          Plaintiff Grand Avenue Emergency Physicians Medical Group, Inc. hereby demands a

3   jury trial on all issues so triable.

4   DATED:  September 25, 2020              BUCHALTER
                                           A Professional Corporation
5

6

7                                          By:   /s/ Andrew H. Selesnick
                                                 ANDREW H. SELESNICK
                                                 THOMAS C. RICKEMAN
8                                                Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

12

**COMPLAINT**

BN 41673006v2